UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TODD and KAREN BRANDT,

    Plaintiffs,

v.

AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA,

    Defendant.

CASE NO. C08-5760BHS

DECISION

## I. SUMMARY OF DECISION

Todd and Karen Brandt (the "Brandts") bring this action to recover a judgment for amounts they allege are owed under their flood insurance policy, which they purchased from American Bankers Insurance ("AB"). The loss amounts they claim were the result of damages the Brandts suffered when flood waters of the Skookumchuck River poured into their property and residence in December 2007.

Although coverage was generally not in dispute and AB paid for damages that it concluded were the proximate result of the flood, it did not pay the full amount the Brandts alleged to be due them under the policy.

The Court held a two-and-one-half-day trial (June 8-10, 2010) in which evidence was presented by the Brandts and AB. The central, but not only, factual issues involved the questions of whether or not the house shifted on the foundation as a result of the 2007 flood and whether the house, apart from the attached garage, suffered any damage that required repair for which AB was required under the policy to compensate the Brandts.

DECISION - 1

The Court concludes that no further moneys are due under the policy and finds for AB. This result is not an entirely equitable result, but the Court heard this case in law and not in equity. It is unfortunate that the Brandts were partially, though unintentionally, misled when AB initially determined that the flood did cause some misalignment of the house on its foundation and had proposed to pay an amount to correct that damage. Only after litigation commenced did AB obtain a better engineering analysis on the question of whether the flood caused the house to shift on its foundation.

Because of the inaccurate conclusion reached by AB's first retained engineer, decisions were, in part, made by the Brandts to proceed on a course that lead to their moving out of their home and seeking the opinions of others, resulting in their conclusion that the house was in need of a new foundation and substantial further repairs to bring their house into a habitable and pre-flood condition.

## II. DISCUSSION

On June 30, 2007, the Brandts for the price of $260,000.00 purchased a four-bedroom rambler-style house for themselves and their 12 children (consisting of their own children and grandchildren), located along the Skookumchuck River in Centralia, Washington. Four months later the river overran its banks and entered the garage that, though it was attached, was situated at an elevation about eighteen inches below the floor level of the main house. Water also entered the crawl space which is walled in by the house foundation.

In dispute at the trial was the extent to which the non-garage portion of the house was affected by the flood waters. While there was a great deal of circumstantial evidence that the water never reached above the beams and stringers supporting the car decking that constituted the underlayment to the floor of the house, Todd and Karen Brandt, as eyewitnesses, saw water lapping up on the exterior siding above the floor level and observed wet carpet following the flood. There was no testimony that standing water was

DECISION - 2

seen in the non-garage portion of the house during or after the flood. Indeed, Karen Brandt expressed relief that it had not. The Court finds that it is likely that the flood level did not rise enough to produce water on the floor of the non-garage portion of the house, but that it is also likely that water sloshed around in the crawl space sufficiently to cause some parts of the car decking to become wet and conceivably saturated in places. This, in turn, could have caused the floor coverings to be wet in places, but there was insufficient evidence to conclude that there was water throughout the house on or in the floor coverings.

Although there was moisture found in the carpet and a high moisture content measured in the car decking months after the flood had subsided, that did not likely result from the December 2007 flood. There was ample time for that moisture to dissipate. More likely, it is the result of a combination of factors. These factors include the moisture from the dirt floor within the foundation resulting from the removal of moisture (or vapor) barrier after the flood and the lack of any subfloor insulation which customarily provides an additional moisture barrier. Another source of moisture was likely the roof leaks and an inadequate gutter-to-eave installation. An interior plumbing leak in the master bedroom bathroom could also have been a contributing factor.

The Court finds that the house did not move on its foundation as a result of the flood. Moreover, it is unlikely that the flood caused any of the anomalies discovered in the house by the Brandts following the flood or as observed by other expert witnesses. The testimony of Edwin Huston, a structural engineer, was compelling in support of his conclusion that the house was unmoved by the flood waters. This conclusion is based on a combination of (1) evidence of paint which was applied before the flood that was continuous and uninterrupted over the surface where the siding and foundation interface; (2) the lack of any evidence of movement of trim adjacent to the sliding door of the

DECISION - 3

bedroom; and (3) the lack of any evidence of movement of the post supporting the house floor and steel plates affixed to the post.

Additionally, Mr. Huston demonstrated that the leaning columns which had been painted before the flood showed no sign of movement either at the top or bottom. Moreover, it is clear that the house had experienced at least one other significant flood event, as well as the Nisqually earthquake, which could have caused the observed anomalies in the columns and siding. In fact, there was no explanation offered for the removal and replacement of the bottom nine inches of siding other than a prior flood event. Another plausible and perhaps more likely theory is that some of these anomalies are actually traceable to the original construction of the house.

One of the somewhat perplexing aspects of the evidence produced at trial was the observed post-flood presence of cracks in the interior walls of the house. Karen Brandt noticed several wall cracks after the flood. Some cracks were also observed by Scott Cook, a home inspector, although he was not familiar with the house prior to the flood and could not offer testimony as to its pre-flood condition. Mr. Huston offered the explanation that interior cracks on walls are the common result of shrinkage and settling. This testimony, however, does not address the observations of Karen Brandt that these cracks had not been seen before the flood. The Court finds that Karen Brandt testified from her best recollection, but concludes that the cracking of interior walls preceded the flood. Her inspection or powers of observation of the wall condition, like the leaning columns and the exterior wall, may have been more keen after the flood event than before – a perfectly natural and common phenomenon.  It is the weight of the other physical evidence previously discussed that leads the Court to its conclusion on this issue as well.

Because the Court finds that there was no damage to the interior of the house resulting from the flood that needed repair, the issue relating to the requirement of the building code of the City of Centralia that the house be raised is moot.  Such a raising

DECISION - 4

requirement is only applicable if the house had suffered damage amounting to more than 50% of its value.  Clearly, the cost of the damage to the garage, which was determined to be $37,715.92 and has already been paid, does not begin to approach one-half the value of the house.

AB raised the uncontested defense that no further compensation is required under the policy of insurance because the Brandts cannot recover replacement costs after the time in which the repairs needed to be made under the terms of that coverage has expired. Therefore, the only other potentially available coverage under the policy is the payment of actual cash value (which is defined in the policy as replacement costs less depreciation).  Because no evidence was offered as to depreciation, AB argues that no further payments under the policy are payable.

Since the Court has determined that there was no damage to the house proximately caused by the 2007 flood, that has not already been paid for by AB, this issue is moot.

### III.  CONCLUSION

AB did not breach its contract of insurance with the Brandts and therefore no money is due them.

AB is instructed to submit proposed findings of fact and conclusions of law consistent with this decision on or before June 30, 2010.  The Brandts may file their objections and proposed findings of fact and conclusions of law consistent with this decision on or before July 9, 2010.

DATED this 21st day of June, 2010.

BENJAMIN H. SETTLE
United States District Judge