UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TODD and KAREN BRANDT,

                    Plaintiffs,                          CASE NO. C08-5760BHS

          v.

AMERICAN BANKERS INSURANCE                FINDINGS OF FACT AND
COMPANY OF FLORIDA,                       CONCLUSIONS OF LAW

                    Defendant.

This matter having come before the Court on a two-and-one-half-day trial, and after considering the evidence submitted by the parties, the Court makes the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT

1.      Plaintiffs Todd and Karen Brandt purchased a four-bedroom rambler-style home on June 30, 2007 for $260,000.  The home is located along the Skookumchuck River in Centralia, Washington.

2.      Defendant American Bankers Insurance Company of Florida (hereinafter, "American Bankers") issued a Standard Flood Insurance Policy, Policy Number AB0 000 7154, to Plaintiffs for building coverage only, which was in effect at all material times. This policy provided coverage pursuant to the terms and conditions of the policy, some of which are set out as follows:

I.     Agreement

The Company provides flood insurance under the terms of the National Flood Insurance Act of 1968 and its Amendments, and Title 44 of the Code of Federal Regulations.

We will pay you for direct physical loss by or from flood to your insured property if you:

1.     Have paid the correct premium;
2.     Comply with all terms and conditions of this policy; and
3.     Have furnished accurate information and statements.

Exhibit 1, p. 1.

II.    Definitions

* * *

B.     The following are other key definitions we use in this policy:

* * *

(12) *Direct Physical Loss By or From Flood.*  Loss or damage to insured property, directly caused by a flood.  There must be evidence of physical changes to the property.
(28) *Valued Policy.* A policy in which the insured and the insurer agree on the value of the property insured, that value being payable in the event of a total loss. The Standard Flood Insurance Policy is not a valued policy.

Exhibit 1, p. 2.

V.     Exclusions

A.     We only pay for direct physical loss by or from flood, which means that we do not pay you for:

* * *

6.     The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris.  This exclusion does not apply to any eligible activities we describe in Coverage D–Increased Cost of Compliance; or

* * *

C.     We do not insure for loss to property caused directly by earth movement even if the earth movement is caused by flood. Some examples of earth movement that we do not cover are:

1.     Earthquake;
2.     Landslide;
3.     Land subsidence;
4.     Sinkholes;
5.     Destablization or movement of land that results from accumulation of water in subsurface land area; or

6.    Gradual erosion.

* * *

D.    We do not insure for direct physical loss caused directly or indirectly by any of the following:

* * *

4.    Water, moisture, mildew, or mold damage that results primarily from any condition:

a.    Substantially confined to the dwelling; or
b.    That is within your control, including but not limited to:
(1)    Design, structural, or mechanical defects;
(2)    Failure, stoppage, or breakage of water or sewer lines, drains, pumps, fixtures, or equipment; or
(3)    Failure to inspect and maintain the property after a flood recedes;

5.    Water or water-born material that:

* * *

c.    Seeps or leaks on or through the covered property;

Unless there is a flood in the area and the flood is the proximate cause of the sewer or drain backup, sump pump discharge or overflow, or the seepage of water.

Exhibit 1, pp. 5-6.

VII.    General Conditions

* * *

D.    Amendments, Waivers, Assignment

This policy cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator.  No action that we take under the terms of this policy constitutes a waiver of any of our rights.

* * *

J.    Requirements in Case of Loss

In case of a flood loss to insured property, you must:

* * *

3.    Prepare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss.  Attach all bills, receipts and related documents.

4.    Within 60 days after the loss, send us a proof of loss, which is your statement of the amount your are claiming under the policy signed and sworn by you, and which furnishes us with the following information:

a.  The date and time of loss;
b.  A brief explanation of how the loss happened;
c.  Your interest and the interest, if any, of others in the damaged property;
d.  Details of any other insurance that may cover the loss;
e.  Changes in title or occupancy of the covered property during the term of the policy;
f.  Specifications of damaged buildings and detailed repair estimates;
g.  Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
h.  details about who occupied any insured building at the time of loss and for what purpose; and
i.  The inventory of damaged personal property described in J.3. above.

* * *

6.  You must cooperate with the adjuster or representative in the investigation of the claim.

7.  The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it.  However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.

8.  We have not authorized the adjuster to approve or disapprove claims or to tell you whether we will approve your claim.

9.  At our option, we may accept the adjuster's report of the loss instead of your proof of loss.  The adjuster's report will include information about your loss and the damages you sustained.  You must sign the adjuster's report.  At your opinion, we may require you to swear to the report.

Exhibit 1, pp. 6-7.

3.      In December 2007 the Skookumchuck River overran its banks and entered the attached garage, which was situated at an elevation about eighteen inches below the floor level of the main house.  Water also entered the crawl space, which is walled in by the house foundation.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 4

4.     Following the flood event, the Brandts submitted a claim to American Bankers under the policy.  Upon receipt of the claim, American Bankers inspected the subject damage.  Based upon this inspection, an estimate for repairs was generated.

5.     American Bankers sent a structural engineer to examine the Brandts' house, and he determined that the house had shifted on its foundation as a result of the flood.

6.     The Brandts submitted a signed proof of loss in the amount of $20,629.83, and pursuant to the proof of loss, American Bankers issued a check to the Brandts in that amount.

7.     The Brandts refused to negotiate American Bankers' check because they believed the amount of reimbursement was too low.

8.     American Bankers proceeded to issue payment for the amount of the estimated repairs in the amount of $37,715.92.

9.     Thereafter the Brandts claimed additional amounts owed under the policy based upon a theory that the house had shifted off its foundation.  American Bankers proceeded to investigate that additional claim.

10.    The flood level did not rise enough to produce water on the floor of the non-garage portion of the house, but that it is also likely that water sloshed around in the crawl space sufficiently to cause some parts of the car decking to become wet and conceivably saturated in places. This, in turn, could have caused the floor coverings to be wet in places, but there was insufficient evidence to conclude that there was water throughout the house on or in the floor coverings.

11.    The moisture found in the carpet and high moisture content measured in the car decking, or underlayment of the flooring, measured months after the flood had subsided did not result from the December 2007 flood.

12.    Any moisture in the carpet and car decking was the result of a combination of factors including the removal of the moisture (or vapor) barrier after the flood, the lack

of any subfloor insulation, roof leaks, inadequate gutter-to-eave installation, as well as a possible contributing factor arising from an interior plumbing leak in the master bedroom bathroom.

13.     The flood did not cause any of the anomalies discovered in the house by the Brandts or observed by other experts following the flood.  The most likely theory is that some of the observed anomalies are the result of the original construction of the house.

14.     The house did not move on its foundation as a result of the flood.  The house did not move off its foundation based on (1) the evidence of paint that was applied before the flood that was continuous and uninterrupted over the surface where the siding and foundation interface; (2) the lack of any evidence of movement of rim adjacent to the sliding door of the bedroom; and (3) the lack of any evidence of movement of the post supporting the house floor and steel plates affixed to the post. Additionally, the leaning columns that had been painted before the flood showed no sign of movement either at the top or bottom.

15.     The house experienced at least one other significant flood event, as well as the Nisqually earthquake, which could have caused the observed anomalies in the columns and siding.  No explanation was offered for the removal and replacement of the bottom nine inches of siding other than because of a prior flood event.

16.     There is no damage to the interior of the house resulting from the flood that needs repair.  The cracking of the interior walls observed by the Brandts preceded the flood.

17.     The Brandts have not made any repairs to the property as of this date.

18.     The compensable damage to the Brandts' house is limited to the amount of $37,715.92 already paid to the Brandts by American Bankers.

## II.  CONCLUSIONS OF LAW

1.     American is a Write-Your-Own Carrier ("WYO") Program carrier participating in the U.S. Government's National Flood Insurance Program (the "NFIP") pursuant to the National Flood Insurance Act of 1968, as amended (the "NFIA") (see 42 U.S.C. § 4001, *et seq*.), and appearing herein in its "fiduciary" capacity as the "fiscal agent of the United States," and at the expense of the U.S. Treasury.  44 C.F.R. Pt. 62.23(f), 42 U.S.C. § 4071(a)(1); *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998).

2.      As the SFIP is itself a codified federal law, found at 44 C.F.R. 61, Appendix A(1) (2007 edition), Plaintiffs are charged with knowledge of the necessary conditions for participating in this U.S. Treasury-funded program.

3.     American itself may not waive any provision of the SFIP, including the Proof of Loss requirement.  Only the Federal Insurance Administrator may do so, and it must be in writing.  44 C.F.R. 61.13(d) and Article VII(D) of the SFIP, codified and found at 44 C.F.R. 61, App. A(1), Article VII(D) (2002 edition).

4.     Absent a waiver in compliance with 44 C.F.R. 61.13(d) and Article VII(D) of the Standard Flood Insurance Policy, no additional amounts can be paid to the Plaintiffs for the alleged damages from the December 04, 2007 flood event.

5.     The SFIP is a "single risk policy" which provides coverage only for "Loss or damage to insured property, directly caused by a flood." (See, e.g., SFIP Article I, Article II(B)(12) and Article V(A).)

6.     The flood policy does not allow for consequential damages – it must be directly by or from flood. See Article V(A)(1) through (7) of the SFIP.

7.     The Appropriations and Supremacy Clauses of the U.S. Constitution, as well as the Separation of Powers Doctrine, prohibits payment of any further amounts to the Plaintiffs absent a waiver by FEMA. However, the Court ordered American Bankers to exercise good faith in seeking a waiver from FEMA of any proof of loss requirement

FINDINGS OF FACT AND
CONCLUSIONS OF LAW - 7

and other conditions to coverage, and American Bankers represented to the Court that waivers in other claims it handled had been granted and that it would seek such a waiver in connection with the Brandts' claim.

8.      The house does not need to be raised pursuant to the requirements of the building code of the City of Centralia because the house has not suffered damage amounting to more than 50% of its value.

9.      The Brandts may not recover replacement costs or code required upgrade costs because the time in which the repairs needed to be made under the terms of the policy's replacement cost coverage has expired.

10.     The Brandts may not recover for the increased costs of code required upgrades or repair costs because such costs have not been incurred.

11.     The Brandts have the burden of proof in establishing their damages.

12.     The Brandts have failed to establish that they are entitled to any additional recovery for the actual cash value of any repairs in addition to the amounts previously paid by American Bankers.  As a result, American Bankers did not breach its contract of insurance with the Brandts, and no money is due the Brandts.

DATED this 13th day of August, 2010.

_____
BENJAMIN H. SETTLE
United States District Judge